ALLYN J. CRAWFORD, ESQ. (AC-2766)
CRAWFORD & BRINGSLID
   Attorneys at Law, P.C.
900 South Avenue, Suite 204
Staten Island, New York 10314
(718) 273-9414 (Telephone)
(718) 273-9418 (Facsimile)
acrawford@crawfordbringslid.com
Attorney for Plaintiff
SILOGRAM LUBRICANTS CORP.

FILED
CLERK

2012 MAR - 1  AM 10: 58

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

**CV 12 - 1005**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**BLOCK, J.**

-------------------------------------------------------------------X

SILOGRAM LUBRICANTS CORP., a New York
Corporation,

**LEVY, M.J.**

          Plaintiff,

**COMPLAINT**

      -against-

EVERCLEAR OF OHIO, LTD., an Ohio
Corporation,

Civ No.

          Defendant.
-------------------------------------------------------------------X

     Plaintiff SILOGRAM LUBRICANTS CORP., a New York Corporation, ("Plaintiff" or "Silogram") by and through its attorneys, Crawford & Bringslid Attorneys at Law, P.C., as and for its complaint as against defendant EVERCLEAR OF OHIO, LTD., ("Defendant" or "Everclear") hereby alleges as follows:

## THE PARTIES

    1.    Plaintiff is a Corporation organized and existing pursuant to the laws of the State of New York with a designated address located at 900 South Avenue, Staten Island, New York 10314.

1

2.     Plaintiff also maintains a manufacturing and distribution facility at 180 West 5th Street, Bayonne New Jersey.

3.     Silogram was founded over 100 years ago and since that time has engaged in the business of distributing lubricating oil and related products to the automobile trade, and transportation industry and other related businesses and users throughout New York, New Jersey and Connecticut.

4.     Silogram has, through the years with diligence developed and created a market for its products which include thousands of separate customers.

5.     These contacts and customers were developed by Silogram at great cost and expense.

6.     Silogram has carefully and deliberately maintained its reputation for providing quality products to these customers, which are in turn used and or sold by such customers in their respective businesses.

7.     The reputation and customer base developed by Silogram have enormous value to Silogram and is one of its greatest assets.

8.     Everclear is a corporation organized and existing pursuant to the laws of the State of Ohio with offices located at 3700 Oakwood Avenue, Austintown, Ohio 44515.

9.     Upon information and belief, Everclear produces motor oils and industrial fuels from a variety of products that include petroleum products from distillates and all other petroleum waste streams and little, if any, from automobile or truck engine oils.

10.    Everclear takes a mix of recycled waste oil and re-refines it, blending it and packaging it for sale as motor oil.

2

11.     Everclear engages in interstate commerce and markets and sells its products, including 10W-30 motor oil, throughout the United States all while being aware Everclear was, or having reasonably been aware, that, its products did not meet the specifications for 10W-30 motor oil.

12.     Everclear promotes and markets its products, including 10-W30 motor oil as being fit for use in automobiles and trucks.

## JURISDICTION

13.     The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332, in that the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship between the Plaintiff and the Defendant.

14.     The Eastern District of New York is the proper venue for this matter as Silogram is a New York Corporation with a designated address located within the City and State of New York, County of Richmond.

## FACTS COMMON TO ALL CAUSES OF ACTION

15.     As part of its regular and ordinary business practices, Silogram purchases and resells 10W-30 motor oil to service stations, gas stations, lube shops and other similar such businesses in New York, New Jersey and Connecticut.

16.     Silogram then transports the oil in drums or in tank trucks to its customers, where it is offloaded into containers or tanks maintained by the individual customers.

17.     In late 2010 Silogram became aware that Everclear was in the business of selling 10W-30 motor oil in bulk.

3

18.     In its promotional and marketing materials, Everclear alleged that (i) its employees diligently oversee its entire production process, (ii) every production step is strictly regulated, (iii) only the finest "feed stock" is used in producing 10W-30 motor oil, (iv) only necessary additives are introduced into the oil.

19.     Everclear further stated and promoted the alleged "facts" that its 10W-30 motor oil (i) "fights corrosion and engine rust", (ii) promoted "excellent engine performance regardless of running temperature or exterior conditions", and (iii) reduced "engine deposits and oxidation that can build up at high temperatures".

20.     The foregoing statements were made in Everclear's marketing and promotional materials, including its web sites located at www.everclearoil.com, www.everclearofohio.net, www.workface.com/e/everclear5w30 and other such similar sites.

21.     Based upon the express and implied warranties and assurances from Everclear, Silogram began to receive shipments of 10W-30 motor oil from Everclear.

22.     Everclear was aware, or reasonably should have been aware, that this oil was being purchased by Silogram for resale.

23.     Upon receipt of the oil purchased from Everclear, Silogram began to distribute the oil to its customers.

24.     Between late 2010 and early 2012, Silogram purchased oil from Everclear at the rate of approximately 20,000 gallons per week.

25.     In November 2011, Silogram began to receive complaints from those customers that the oil was "disappearing" from automobile engines at a very high rate.

4

26.    During this period, Silogram was told that customer's oil consumption when using the Everclear oil was extraordinary and that, in some cases, the oil would entirely disappear from the final user's vehicle, such that engine failures began to occur.

27.    Silogram investigated these complaints but was unable to determine the basis therefore.

28.    Beginning in November, 2011 Silogram also began to receive complaints that the oil being delivered by Everclear and distributed by Silogram was contaminated with enormous amounts of pea sized pellets or lumps identified as "jelly beans".

29.    These pellets were yellow and soft in nature and were suspended in the oil.

30.    Silogram began to notice these pellets, which had in fact clogged some of the filters in Silogram's equipment.

31.    Beginning in November and December 2011 Silogram undertook to determine where these pellets were coming from.

32.    As part of this investigation, Silogram learned that the oil being sold by Everclear had been determined by the Petroleum Quality Institute of America to be of such inferior quality that it was capable of causing damage to car engines as it was missing the required additives and contained high levels of chemicals not normally found in motor oil and further indicated that it should not be used in automobile engines.

33.    As part of this investigation, Silogram learned that the "jelly beans" found in the oil were caused by the improper addition of polymers during the re-refining process which did not dissolve and go into solution but rather stayed in suspension, thus causing major damage and engine failure.

34.     As part of this investigation, Silogram learned that the oil being sold by Everclear was oversaturated with elements which caused the oil to burn off and evaporate at high temperatures.

35.     As part of this investigation, Silogram learned that the oil being sold by Everclear contained amount of silica, dirt and distillates which caused the oil to burn off and evaporate at high temperatures.

36.     In late November, 2011, Everclear acknowledged that there were undissolved "beads" in the oil it had delivered to Silogram and indicated that changes would be made to the manufacturing process to eliminate such undissolved "beads" in the future, which changes did not occur.

37.     During December and January 2012 Silogram began to receive numerous complaints from customers about problems with cars including blown engines, "jelly bean oil", and oil which continued to evaporate.

38.     Silogram began to lose many of its customers and has continued to continually lose additional customers as a result of damage to automobiles serviced by its customers.

39.     Silogram has suffered tremendous lost revenue on account of this loss of business, which losses are continuing as well as a damaged reputations which cannot be recovered.

40.     Silogram has been targeted in the marketplace as a seller of "jelly bean oil" by its competitors on account of having sold the oil provided by Everclear.

41.     Silogram has suffered a tremendous loss of reputation on account of the oil sold by Everclear being defective and improper for use in automobiles.

6

## AS AND FOR A FIRST CAUSE OF ACTION

42.     Silogram repeats, realleges and reiterates each and every allegation contained in paragraphs "1" through "41" as if set forth more fully at length herein.

43.     At the time it sold the oil herein to Silogram, Everclear knew or reasonably should have known that the oil was required for resale to Silogram's customers as motor oil which would be used in passenger cars and trucks.

44.     Silogram reasonably relied on Everclear's skill and judgment to furnish it with 10W-30 motor oil suitable for use as motor oil which would be used in passenger cars and trucks.

45.     The product sold and delivered to Silogram by Everclear was not fit or suitable for use as a motor oil inasmuch as same damaged the passenger cars and trucks in which it was intended for use.

46.     By reason of the fact that it was not fit for that purpose, Everclear breached the implied warranty of fitness for a particular purpose pursuant to UCC § 2-315.

47.     Silogram verbally and through other means gave notice to Everclear that its oil was defective, that there were problems with the oil, and that it was not suitable for the purpose delivered.

48.     As a direct and proximate result of the breach of warranty, Silogram has (i) received numerous complaints, (ii) lost and continues to lose customers, (iii) suffered tremendous lost revenue on account of this loss of business, (iv) suffered a loss of reputation and (v) been targeted in the marketplace by its competitors, resulting in substantial damages.

49.     As a direct and proximate result of Everclear's breach of warranty, Plaintiff has suffered damages in regard to and arising from the defective motor oil as well as incidental and

7

consequential damages resulting from the breach of warranty in an amount to be determined at trial but not less than $25,000,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION

50.     Plaintiff repeats, realleges and reiterates each and every allegation in paragraph "1" through "49" hereof as though set forth fully herein.

51.     By selling the subject oil, Everclear, as a matter of law, impliedly warranted that its product was merchantable in that it was fit for the ordinary purpose for which such goods are used.

52.     The subject product herein was only used for its intended use, as a motor oil.

53.     Everclear's product was not fit for its intended use; therefore, Everclear's implied warranty of merchantability pursuant to UCC § 2-314 was breached.

54.     As a direct and proximate result of the breach of warranty, Silogram has (i) received numerous complaints, (ii) lost and continues to lose customers, (iii) suffered tremendous lost revenue on account of this loss of business, (iv) suffered a loss of reputation and (v) been targeted in the marketplace by its competitors, resulting in substantial damages.

55.     As a direct and proximate result of Everclear's breach of warranty, Plaintiff has suffered damages in regard to and arising from the defective motor oil as well as incidental and consequential damages resulting from the breach of warranty in an amount to be determined at trial but not less than $25,000,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION

56.     Plaintiff repeats, realleges and reiterates each and every allegation in paragraph "1" through "55" hereof as though set forth fully herein.

57.    Everclear expressly warranted to its purchasers, customers and end users that its subject product was suitable for its intended use as a motor oil.

58.    The subject product herein was only used for its intended use by Silogram, as a motor oil.

59.    Everclear's product was not suitable for its intended use; therefore, Everclear's warranty with Silogram was breached.

60.    As a direct and proximate result of the breach of warranty, Silogram has (i) received numerous complaints, (ii) lost and continues to lose customers, (iii) suffered tremendous lost revenue on account of this loss of business, (iv) suffered a loss of reputation and (v) been targeted in the marketplace by its competitors, resulting in substantial damages.

61.    As a direct and proximate result of Everclear's breach of warranty, Plaintiff has suffered damages in regard to and arising from the defective motor oil as well as incidental and consequential damages resulting from the breach of warranty in an amount to be determined at trial but not less than $25,000,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION

62.    Plaintiff repeats, realleges and reiterates each and every allegation in paragraph "1" through "61" hereof as though set forth fully herein.

63.    Silogram and Everclear were parties to a contract wherein Everclear had agreed to provide motor oil to Plaintiff for an agreed upon price.

64.    Everclear failed to provide the motor oil as agreed.

65.    The motor oil provided by Everclear, to the extent same was provided, was improper, unsuitable, defective and not in compliance with the contract.

66.    As such, Defendants breached their contract with Plaintiff.

9

67.     As a direct and proximate result of Everclear's breach of contract, Plaintiff has suffered damages in regard to and arising from the improper, unsuitable, defective and non-compliant motor oil as well as incidental and consequential damages resulting from the breach of contract in an amount to be determined at trial but not less than $25,000,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION

68.     Plaintiff repeats, realleges and reiterates each and every allegation in paragraph "1" through "67" hereof as though set forth fully herein.

69.     Everclear is engaged in the business of producing motor oils and industrial fuels and sells these products throughout the United States.

70.     Everclear, in the course of its business, negligently sold certain oil to Silogram, representing this oil to be suitable for use as a motor oil and for resale as same.

71.     Silogram, in reliance on Everclear's representations, resold and used the subject oil as a motor oil.

72.     After distributing the subject oil, Silogram's customer's complained the the oil damaged their automobiles and the automobiles of their customers.

73.     As a direct and proximate result of Everclear's negligence, Silogram has (i) received numerous complaints, (ii) lost and continues to lose customers, (iii) suffered tremendous lost revenue on account of this loss of business, (iv) suffered a loss of reputation and (v) been targeted in the marketplace by its competitors, resulting in substantial damages.

74.     Based upon the foregoing, Silogram has been damage in an amount to be determined at trial but not less than $25,000,000.00.

## AS AND FOR A SIXTH CAUSE OF ACTION

75.     Plaintiff repeats, realleges and reiterates each and every allegation in paragraph

"1" through "74" hereof as though set forth fully herein.

76. Everclear represented to Silogram that the subject oil could be used as a motor oil for resale and use in automobiles.

77. Everclear knew or should have known that Silogram that this oil was being purchased by Silogram for resale.

78. Silogram relied on Everclear's representation regarding the subject oil.

79. Silogram's reliance on Everclear's representation was at all times reasonable.

80. In reasonable reliance on Everclear's representations, Silogram purchased the subject oil from Everclear and upon receipt of same, Silogram began to distribute the oil to its customers.

81. At all times hereinafter mentioned, the oil provided by Everclear was not suitable for use as motor oil and, if used, would cause damage to automobiles.

82. Everclear knew or should have known that the subject oil was in fact not suitable for use as motor oil and, if used, would cause damage to automobiles.

83. Silogram would not have purchased this oil for Everclear had it known that the oil was not suitable for resale or use as motor oil.

84. Everclear's misrepresentations and Silogram's reasonable reliance thereon constitutes fraud.

85. Based upon the foregoing, Silogram has been damage in an amount to be determined at trial but not less than $25,000,000.00.

## AS AND FOR A SEVENTH CAUSE OF ACTION

86. Plaintiff repeats, realleges and reiterates each and every allegation in paragraph "1" through "85" hereof as though set forth fully herein.

87.     New York General Business Law ("GBL") § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State.

88.     By virtue of selling oil to Silogram, a New York based company, Everclear has conducted business under the meaning of GBL § 349.

89.     Everclear, in selling the subject oil herein, misrepresented and marketed to Silogram that same could be used in automobiles as a motor oil.

90.     By its conduct, Everclear has engaged and continue to engage in deceptive acts and practices in the conduct of business, trade and commerce, and in the furnishing of services within New York State, all in violation of New York General Business Law § 349 *et seq.*

91.     GBL § 349(h) provides in relevant part that:

> . . . any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, [and] an action to recover his actual damages . . .

92.     Everclear willfully and knowingly engaged in the misrepresention and marketing of the subject oil herein as a motor oil.

93.     Everclear's deceptive acts acts and practices have directly and proximately resulted in damages to Silogram.

94.     As a direct and proximate result of Everclear's violation of GBL § 349, Plaintiff has suffered damages in an amount to be determined at trial but not less than $25,000,000.00.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

95.     Plaintiff repeats, realleges and reiterates each and every allegation in paragraph "1" through "94" hereof as though set forth fully herein.

12

96.     GBL § 350 makes unlawful "false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

97.     In its promotional and marketing materials, Everclear alleged that (i) its employees diligently oversee the entire re-refining production process, (ii) every production step is strictly regulated, (iii) only the finest "feed stock" is used in producing 10W-30 motor oil, (iv) only necessary additives are introduced into the oil.

98.     Everclear further stated and promoted the alleged "facts" that its 10W-30 motor oil (i) "fights corrosion and engine rust", (ii) promoted "excellent engine performance regardless of running temperature or exterior conditions", and (iii) reduced "engine deposits and oxidation that can build up at high temperatures".

99.     Everclear advertised the subject oil as being suitable for use as a motor oil in automobiles when they knew or should have known that the oil was not suitable for that purpose.

100.    Everclear's acts constitute false advertising in violation of GBL § 350, causing harm to Silogram.

101.    Everclear willfully and knowingly engaged in the conduct described above.

102.    As a direct and proximate result of Everclear's violation of GBL § 350, Plaintiff has suffered damages in an amount to be determined at trial but not less than $25,000,000.00.

## AS AND FOR AN NINTH CAUSE OF ACTION

103.    Plaintiff repeats, realleges and reiterates each  and every allegation in paragraph "1" through "102" hereof as though set forth fully herein.

104.    On account of Everclear's delivery to Silogram of oil for resale, Everclear has alleged that there are sums due to it for goods sold and delivered.

13

105.     Silogram is entitled to "set off" any sums claimed due by Everclear from any amounts claimed due the actual damages incurred by Silogram.

106.     Silogram is entitled to "set off" from any sums claimed due the difference between the value of the product delivered by Everclear and the true and accurate value of such merchandise.

107.     As such, Silogram is entitled to judgment declaring that, by the doctrine of "set off", there are no sums due and owing to Everclear by Silogram.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court find that Judgment be issued in favor of Plaintiff:

(i)     On the First Cause of Action, an amount to be determined at trial but not less than $25,000,000.00; and

(ii)     On the Second Cause of Action, an amount to be determined at trial but not less than $25,000,000.00; and

(iii)     On the Third Cause of Action, an amount to be determined at trial but not less than $25,000,000.00; and

(iv)     On the Fourth Cause of Action, an amount to be determined at trial but not less than $25,000,000.00; and

(v)     On the Fifth Cause of Action, an amount to be determined at trial but not less than $25,000,000.00; and

(vi)     On the Sixth Cause of Action, an amount to be determined at trial but not less than $25,000,000.00; and

(vii)     On the Seventh Cause of Action, an amount to be determined at trial but not less than $25,000,000.00; and

(viii)   On the Eighth Cause of Action, an amount to be determined at trial but not less than $25,000,000.00; and

(ix)   On the Ninth Cause of Action, a declaratory judgment that there are no sums due from Silogram to Everclear on account of the oil sold by Everclear to Silogram; and

(x)   The costs, disbursements and fees associated with the prosecution of this action; and

(xi)   Such further relief as this Court deems just and proper.

                                        **CRAWFORD & BRINGSLID**
                                        *Attorneys at Law P.C.*

                                        /S/ Allyn J. Crawford (AC-2766)
                                        Allyn J. Crawford, Esq.
                                        900 South Avenue, Suite 900
                                        Staten Island, New York 10314
                                        *Attorneys for Plaintiff*
                                        *Silogram Lubricants Corp.*

Dated: February 24, 2012